1
2
3
4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6
7    KIAN R. MCCARTHY,                          Case No.  15-cv-03308-JSC

             Plaintiff,
8
9         v.                                    **ORDER GRANTING MOTION TO
                                                DISMISS COMPLAINT**
10   MEGAN J. BRENNAN,
                                                Re: Dkt. No. 15
11           Defendant.

12

13        Plaintiff Kian McCarthy ("Plaintiff"), proceeding pro se, brings this action pursuant to

14   Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act

15   ("ADA"), and the Rehabilitation Act of 1973 ("Rehabilitation Act") against his former employer,

16   the United States Postal Service ("Post Office"), through Postmaster General Megan J. Brennan

17   ("Defendant").  (Dkt. No. 1.)  Plaintiff alleges that Defendant's actions—specifically, instructing

18   Plaintiff to attend a Fitness for Duty Examination ("Fitness Exam") and later terminating his

19   employment by issuing him a Notice of Removal ("Removal Notice")—were adverse employment

20   actions constituting race, gender, age, and disability discrimination in violation of Title VII;

21   disparate treatment disability discrimination and failure to accommodate in violation of the ADA

22   and the Rehabilitation Act; and retaliation for protected activity.  (Dkt. No. 1 at 1-5.)

23        Now pending before the Court is Defendant's motion to dismiss.  (Dkt. No. 15.)  After

24   carefully considering the parties' pleadings, and having had the benefit of oral argument on March

25   10, 2016, the Court GRANTS Defendant's motion, with leave to amend.

26
27
28

United States District Court
Northern District of California

# BACKGROUND

The following background is based on the allegations of the Complaint and the documents attached thereto, which include Plaintiff's description of his claims and a portion of the administrative record of Plaintiff's EEOC claims.[1]

## I.    Factual Background

Plaintiff worked for Defendant for approximately 24 years.  (Dkt. No. 1 at 11.)  At the time of the incidents at issue in this case, Plaintiff worked as a letter carrier in Sausalito, California.  (*Id.* at 28.)  Plaintiff is a Caucasian male and was 56 years old at the time of the alleged adverse employment actions.  (*Id.* at 29.)

The events alleged in the Complaint date back to 1998.  That year, a Post Office psychiatrist conducted a Fitness Exam of Plaintiff.  (*Id.* at 20.)  In a report to Defendant's Medical Unit ("1998 Fitness Exam report"), the staff psychiatrist diagnosed Plaintiff with obsessive-compulsive personality disorder and avoidant personality disorder and stated his belief that Plaintiff's condition was untreatable, permanent, and unlikely to improve with treatment or time.  (*Id.* at 20-21.)

During his employment over the years that followed, Plaintiff filed multiple union grievances and EEO complaints and sent letters to his Post Office supervisors and management.  (*Id.* at 17.)  One EEO complaint resulted in mediation in 2005, after which Plaintiff's Supervisor, Jackie Suarez, told Plaintiff's EEO Representative, Mark Mindrup, "I'm going to get Kian McCarthy because he files too many [EEO complaints]."  (*Id.* at 9, 27.)  Five years later, in May

---

[1] The Court can always consider documents attached to a complaint on a motion to dismiss.  *See* Fed. R. Civ. P. 10; *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426, 429-30 (9th Cir. 1978).  Moreover, in the context of employment discrimination cases in particular, courts may judicially notice the administrative record of a plaintiff's claims before the EEOC.  *See, e.g.*, *Hsu v. Donohoe*, No. 5:13-cv-02253-PSG, 2014 WL 1153912, at *2 (N.D. Cal. Mar. 20, 2014).  In doing so, the Court only notices the existence of the administrative record and does not credit the truth of any fact recounted or matter asserted in the documents.  *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1070 (N.D. Cal. 2010).  Additionally, Plaintiff's opposition consists largely of new factual allegations.  (*See* Dkt. No. 22.)  Although the Court does not consider these facts in deciding whether the Complaint states a claim, they are relevant to Plaintiff's ability to successfully amend.  *See Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) (citation omitted); *Monzon v. S. Wine & Spirits of Cal.*, 834 F. Supp. 2d 934, 943 (N.D. Cal. 2011).  Thus, the Court considers the facts newly alleged in Plaintiff's opposition solely to determine whether to grant leave to amend.

2010, Defendant issued Plaintiff a Letter of Warning and a Seven-Day No-Time-Off Suspension following complaints of Plaintiff's dangerous and reckless driving on the job.  (*Id.* at 29.)

Plaintiff filed another grievance in the summer of 2010 alleging that Supervisor Suarez denied him a leave slip and verbally abused him.  (*Id.*)  In response, Supervisor Suarez expressed concern to an HR Manager that Plaintiff's behavior was becoming desperate, delusional, irrational, paranoid, and worse than had been reported in the 1998 Fitness Exam report.  (*Id.*) Accordingly, in August 2010, Supervisor Suarez requested that Plaintiff attend another Fitness Exam because Plaintiff had reported to work with "globs of cream" on his face, cotton sticking out of his ears, and blood stains on himself and in his work vehicle; delivered mail "in a rage"; had experienced two road rage incidents in the Post Office parking lot; and had been the subject of local residents' complaints to police.  (*Id.* at 28-29.)  Defendant issued Plaintiff a letter instructing him to attend a Fitness Exam on September 13, 2010.  (*Id.* at 29.)  In the 2010 Fitness Exam report that followed, the Post Office psychiatrist concluded that Plaintiff had chronic clinical depression and anxiety and significant interpersonal relation problems but that he was mentally fit for employment with Defendant as a letter carrier.  (*Id.* at 11.)  The doctor made a number of treatment recommendations for Plaintiff, including months of weekly mental health care, and recommended workplace support and accommodation for that private mental health treatment. (*Id.* at 11.)  Post Office supervisors read the report.  (*Id.* at 14.)

On December 8, 2010, Defendant—specifically, Supervisor Suarez—issued Plaintiff the Removal Notice.  (*Id.* at 2, 4, 29, 31.)  The Removal Notice cited unsatisfactory performance and improper conduct, including continuous usage of unauthorized overtime, two instances where Plaintiff drove his work vehicle at high speeds, and police complaints about Plaintiff's dangerous and reckless driving.  (*Id.* at 29.)  Defendant did not put Plaintiff on a 14-day suspension consistent with its typical disciplinary procedure before issuing the Removal Notice.  (*Id.* at 9.)

## II.    Procedural History

Six days later, on December 14, 2010, Plaintiff filed a formal complaint with the EEOC claiming that Defendant discriminated against him on the bases of race, gender, age, and disability and in reprisal for prior protected EEO activity when they issued the 2010 Fitness Exam order and

the Removal Notice.[2]  (*Id.* at 4, 29.)  An administrative law judge denied Plaintiff's claim in July

2013, and the EEOC affirmed in April 2015.  (*Id.* at 29-34.)  Plaintiff then filed a request for

reconsideration.[3]  (*Id.* at 7-9.)

Plaintiff filed this action on July 16, 2015.  (Dkt. No. 1.)  The Complaint challenges two

adverse employment actions included in Plaintiff's 2010 EEO Complaint: the 2010 Fitness Exam

order and the Removal Notice.  (*Id.* at 2, 4.)  Plaintiff alleged claims for relief for race, gender,

age, and disability discrimination as well as reprisal for engaging in prior EEO activity.  (*Id.* at 2.)

Defendant's motion to dismiss followed.  (Dkt. No. 15.)

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but

mandates "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  For purposes of ruling

on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and

construe[s] the pleadings in the light most favorable to the non-moving party."  *Manzarek v. St.

Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on

either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a

cognizable legal theory."  *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.

2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319,

326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue

of law").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under

which a party is required to make only "a short and plain statement of the claim showing that the

pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 555).  "[C]onclusory allegations of law and unwarranted inferences are

---

[2] The union also filed a grievance; an arbitrator upheld the Removal Notice.  (*Id.* at 29.)
[3] Neither the Complaint nor the attached documents indicate whether the EEOC ruled on
Plaintiff's request for reconsideration.

United States District Court
Northern District of California

insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"), *cert. denied*, 132 S. Ct. 2101 (2012). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-*Iqbal*, noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342 (internal quotation marks and citations omitted). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If a court grants a Rule 12(b)(6) motion, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

## DISCUSSION

Defendant moves to dismiss the lion's share of Plaintiff's claims for various reasons.

### A.  Title VII Claims

The elements of a Title VII discrimination claim are that the plaintiff: (1) belongs to a protected class, (2) performed his job satisfactorily, (3) suffered an adverse employment action, and (4) the employer treated him differently because of his membership in the protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citation omitted); *see also Brown v. FPI Mgmt., Inc.*, No. C-11-0514-YGR, 2012 WL 629182, at *3 (N.D. Cal. Feb.

United States District Court
Northern District of California

5

27, 2012) (citations omitted).  The fourth element—that the plaintiff was subjected to adverse employment action *because of* his membership in a protected class—can be alleged either through direct evidence of discrimination, such as a supervisor's derogatory comment about his race or gender, *see, e.g.*, *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1050 (9th Cir. 2009), or through circumstantial evidence, which may include allegations that similarly situated individuals outside the plaintiff's protected class were treated more favorably or that other circumstances surrounding the at-issue employment action give rise to an inference of discrimination, *see Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105-06 (9th Cir. 2008); *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).  "While an employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss," courts generally "take each element in turn in determining whether [a plaintiff] has stated a plausible claim for relief."  *Brown*, 2012 WL 629182, at *3 (citation omitted).

     1.  *Plaintiff Fails to Adequately Allege Race Discrimination*

     Plaintiff's first claim, alleging race discrimination, fails to state a claim.[4]  While the allegations are somewhat unclear, it appears that Plaintiff alleges that Defendant discriminated on the basis of race when it issued the Fitness Exam order and the Removal Notice.

     Plaintiff has plausibly alleged the first element: while the Complaint itself does not identify Plaintiff's race, the attached documents indicate that he is Caucasian.[5]  (Dkt. No. 1 at 29.)  As a Caucasian, Plaintiff belongs to a protected class.  *See Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002), *as amended* (July 18, 2002) (holding that the plaintiff, despite being white, was a member of a protected class for purposes of his race discrimination claim because "[i]t is well-established that Title VII applies to any racial group, whether minority or majority") (citation omitted); *see also Hilber v. Int'l Lining Tech.*, No. C 12-00003 LB, 2012 WL 3542421, at *4 (N.D. Cal. July 24, 2012).

---

[4] Defendant mentions in a footnote that "[i]t does not appear that [P]laintiff pursued a race discrimination theory in his EEOC appeal, as it was not one of his contentions of error on appeal." (Dkt. No. 15 at 5 n.1 (citing Dkt. No. 1 at 30).)  Neither party submitted Plaintiff's EEOC appeal to the Court, but the EEOC appeal decision suggests that Plaintiff appealed the summary judgment decision in its entirety, as to all of his claims.  (*See* Dkt. No. 1 at 29.)  In any event, Defendant appears to concede that the Court should address Plaintiff's race discrimination claim.

[5] In his opposition, Plaintiff alleges that he "has fair skin and is of Irish heritage."  (Dkt. No. 22 at 11.)  However, as discussed above, the Court does not consider facts alleged for the first time in the opposition in determining a claim's sufficiency.  *See Broam*, 320 F.3d at 1026.

United States District Court
Northern District of California

As to the second element, Plaintiff does not affirmatively allege that he performed his job adequately, which is how courts often deem this element satisfied. *See, e.g.*, *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012); *Brown*, 2012 WL 629182, at *4. Nor does he allege facts in support of satisfactory performance, such as good performance reviews. *Cf. Sheppard*, 694 F.3d at 1050 (finding that the plaintiff plausibly alleged the second element where she alleged that her performance was "satisfactory or better" and that "she received consistently good performance reviews"); *Brown*, 2012 WL 629182, at *4 (finding that the plaintiff plausibly alleged the second element where she alleged that she performed her job satisfactorily, received positive performance reviews, and was asked to help train other employees). However, drawing all inferences in Plaintiff's favor, the administrative record plausibly suggests that Plaintiff was capable of performing his job adequately. For instance, in the 2010 Fitness Exam report—dated three months before his termination—Plaintiff reported that he had 24 years of acceptable work performance, and the psychiatrist concluded that Plaintiff was mentally fit for employment as a letter carrier for Defendant. (Dkt. No. 1 at 11.) On the other hand, the administrative record also suggests that Plaintiff's job performance was not satisfactory, which led to the Fitness Exam order and ultimately to Plaintiff's termination. (*Id.* at 28-29.) However, construing the Complaint and the documents attached thereto in the light most favorable to Plaintiff as required, the Court concludes that Plaintiff has satisfied the second element. Additionally, Plaintiff's opposition alleges—albeit in regards to his disparate treatment disability discrimination claim—that he could perform his essential job functions with or without an accommodation. (Dkt. No. 22 at 8.) While the Court does not consider facts alleged for the first time in the opposition, *see Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) (citation omitted), if Plaintiff amends his Complaint, he should include an affirmative allegation that he performed his job adequately and some supporting factual allegation to further bolster element two, even though this element is met from the administrative record's facts alone.

Plaintiff has also satisfied the third element. Plaintiff alleges two adverse employment actions in the Complaint: (1) the Fitness Exam order[6] and (2) the Removal Notice. (Dkt. No. 1 at

---

[6] The Complaint leaves a question as to what employment actions Plaintiff challenges. On the one hand, he lists both the Fitness Exam order and Removal Notice as discriminatory actions. (Dkt. No. 1 at 4.) On the other hand, he explains that he "decided for purposes of this action to not place

1-5.)  An adverse employment action generally is one that "materially affect[s] the compensation, terms, conditions, or privileges of . . . employment."  *Chuang v. Univ. of Cal. Davis,* 225 F.3d 1115, 1126 (9th Cir. 2000).  While courts must define adverse employment actions "broadly[,]" *Ray v. Henderson,* 217 F.3d 1234, 1240 (9th Cir. 2000), "[n]ot every employment decision amounts to an adverse employment action[,]" *Strother v. S. Cal. Permanente Med. Grp.,* 79 F.3d 859, 869 (9th Cir. 1996) (footnote omitted).  Here, Plaintiff does not allege facts showing that the Fitness Exam order materially affected his compensation or the terms, conditions, or privileges of his employment, so it does not constitute an adverse employment action.  *See, e.g.*, *McFadden v. El Centro*, No. 13CV1580 JM DHB, 2014 WL 3002364, at *3 (S.D. Cal. July 2, 2014) (holding that requiring the plaintiff to submit to a fitness exam, without more, was not an actionable adverse employment action); *Bellusa v. Bd. of Educ. of the Oakland Unified Sch. Dist.*, No. C-13-2930 JSC, 2013 WL 6443374, at *8 (N.D. Cal. Dec. 9, 2013) (noting that the plaintiff must allege more to show that even repeated fitness exam orders were adverse employment actions, but finding an adverse employment action based on other conduct).  At least one court in the Ninth Circuit has concluded that a fitness exam order can constitute an adverse employment action.  *See Day v. United Parcel Serv., Inc.*, 829 F. Supp. 2d 969, 976-77 (D. Or. 2011).  But there, the court determined that the fitness exam order in conjunction with a requirement that the plaintiff obtain medical certification was the adverse action, and the analysis emphasized that the certification requirement, not the fitness exam, was the real problem because it effectively rendered the plaintiff unable to work for a period of time.  *Id.*  There are no such allegations here.  The Court therefore follows *McFadden* and the other courts in concluding that, absent other allegations that it affected terms of Plaintiff's employment, the Fitness Exam order is not an actionable adverse employment action.

On the other hand, Defendant does not dispute, and the Court concludes, that the Removal Notice constitutes an adverse employment action as it effected Plaintiff's termination and

---

emphasis on" the Fitness Exam order and alleges that "[t]he main reason I am filing this action against the U.S. Postal Service at this time . . . is due to . . . the fact that I was issued a Notice of Removal from the U.S. Postal Service on December 8, 2010 and thus was fired from my job[.]"  (Dkt. No. 1 at 4.)  In his opposition Plaintiff states that he "does not want to abandon [the] issue of [the Fitness Exam][.]"  (Dkt. No. 22 at 9.)  The Court liberally construes the Complaint to challenge the Fitness Exam order.  However, as discussed herein, the Fitness Exam order does not constitute an actionable adverse employment action as a matter of law.

therefore materially affected—indeed, eliminated—his employment.  *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (termination constitutes an adverse employment action); *Rux v. Starbucks Corp.*, No. 2:05CV02299MCEEFB, 2007 WL 1470134, at *7 (E.D. Cal. May 18, 2007) ("Plaintiff's termination constitutes [an] adverse employment action").  Thus, Plaintiff has plausibly alleged the third element only with respect to the Removal Notice.

But Plaintiff's race discrimination claim fails to allege the fourth element—that Defendant issued the Removal Notice *because of* his race.[7]  The Complaint and documents attached thereto are devoid of factual allegations of direct evidence of race discrimination, such as an allegation that a supervisor made a derogatory comment about Plaintiff's race.  *See, e.g., Boeing Co.*, 577 F.3d at 1050.  Nor does the Complaint allege facts constituting circumstantial evidence sufficient to raise a plausible inference of race discrimination.  *See Surrell*, 518 F.3d at 1105-06; *Hawn*, 615 F.3d at 1156.

First, Plaintiff has not alleged any facts that Defendant did not terminate other, non-Caucasian letter carriers who engaged in conduct similar to his own—such as a similarly situated non-Caucasian employee who was not terminated after being cited for unsatisfactory performance and improper conduct, including continuous usage of unauthorized overtime and two instances of driving a work vehicle at high speeds.  *See Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct") (footnote omitted); *Lin v. Potter*, No. C-10-03757-LB, 2011 WL 1522382, at *12 (N.D. Cal. Apr. 21, 2011) (finding that the plaintiff failed to meet the fourth element where she failed to allege that the employee who received a promotion instead of her was similarly situated regarding eligibility for promotion and failed to allege that he was a different race than her).  While Plaintiff argued in his reconsideration request that the EEOC should infer disparate treatment because Defendant omitted the 14-day suspension prior to terminating Plaintiff whereas "hundreds of other Postal employees were required to receive 14-day suspensions as the required disciplinary step before they were fired" (Dkt. No. 1 at 9), the reconsideration request does not state that those other employees were non-Caucasian, that they held jobs similar to

---

[7] Because the Fitness Exam order, as alleged, does not constitute an adverse employment action, this analysis of element four focuses only on the Removal Notice.

Plaintiff's, or that they engaged in conduct similar to Plaintiff's.[8]  *See Vasquez*, 349 F.3d at 641.

Put another way, there are no facts alleged that render this conclusory allegation of race

discrimination plausible.

Second, the Complaint and attached documents do not allege other facts that give rise to an

inference of race discrimination.  For example, there are no allegations that Plaintiff's supervisor

or other decision-makers on the Removal Notice ever mentioned Plaintiff's race, or any other facts

that demonstrate intent to discriminate.

Because Plaintiff has failed to allege facts sufficient to plausibly state a race discrimination

claim, the Court GRANTS Defendant's motion to dismiss this claim, with leave to amend.  *See*

*Lopez*, 203 F.3d at 1127.

### 2.   *Plaintiff Fails to Adequately Allege Gender Discrimination*

Plaintiff's claim for gender discrimination also fails to state a claim.  (Dkt. No. 1 at 1-2.)

Again, the Complaint is not a model of clarity, but it appears that Plaintiff alleges that the same

two employment actions alleged in the race discrimination claim also constitute gender

discrimination, and the analysis is similar.

Plaintiff has satisfied the first element.  Although the Complaint itself does not identify

Plaintiff's gender, the attached documents indicate that he is male.  (Dkt. No. 1 at 29.)  He

therefore belongs to a class that Title VII protects against gender discrimination.  *Newport News*

*Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 682 (1983).  As to the second and third

elements, the analysis is identical to the race claim analysis: drawing all inferences in Plaintiff's

favor, the Complaint sufficiently alleges that he performed his job adequately, but it would

behoove Plaintiff to affirmatively allege as much in any amended pleading.  And he satisfies the

third element because the Removal Notice—but not the Fitness Exam order—constitutes an

adverse employment action.

However, the gender discrimination claim falls flat when it comes to the fourth element:

alleging facts that raise a plausible inference that Defendant issued the Removal Notice *because of*

Plaintiff's gender.  Like the race discrimination claim, the Complaint and attached documents lack

---

[8] Furthermore, the reconsideration request discusses only disability discrimination, not race
discrimination.

United States District Court
Northern District of California

United States District Court
Northern District of California

factual allegations of either direct evidence of gender discrimination, *see, e.g.*, *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998), *as amended* (Aug. 11, 1998), or circumstantial evidence from which the Court could reasonably infer discrimination, *see, e.g.*, *Vasquez*, 349 F.3d at 641.

Because Plaintiff therefore fails to state a claim for gender discrimination, the Court GRANTS Defendant's motion to dismiss the claim, with leave to amend.  *See Lopez*, 203 F.3d at 1127.

**B.  Plaintiff Fails to Adequately Allege Age Discrimination[9]**

Plaintiff's form employment discrimination claim states that he brings the entire action pursuant to Title VII, including his age discrimination claim.  (*Id.* at 1.)  But Title VII does not protect against age discrimination.  *See Nnachi v. City of S.F.*, No. C 10-00714 MEJ, 2010 WL 3398545, at *4 (N.D. Cal. Aug. 27, 2010), *aff'd sub nom. Nnachi v. City & Cnty. of S.F.*, 467 F. App'x 644 (9th Cir. 2012).  However, construing Plaintiff's pro se complaint liberally as required, *see Erickson*, 551 U.S. at 94; *Hebbe*, 627 F.3d at 342, the Court analyzes the age discrimination claim as a claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 633a.

The ADEA provides that all personnel decisions affecting federal employees who are at least 40 years of age shall be made free from discrimination based on age.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).  To state a claim for age discrimination under the ADEA, a plaintiff must establish that (1) he was at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances giving rise to an inference of age discrimination. *Diaz v. Eagle Produce, Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

Here, the Complaint satisfies the first three elements.  As to element one, the

---

[9] At oral argument Defendant's counsel acknowledged that Defendant did not move to dismiss Plaintiff's age discrimination claim.  However, a court may dismiss a claim *sua sponte* under Rule 12(b)(6), and may do so "without notice where the claimant cannot possibly win relief."  *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (citations omitted); *Foley v. U.S.*, No. C 06-7481 CW, 2007 WL 2429414, at *5 (N.D. Cal. Aug. 23, 2007) (*sua sponte* dismissing claim with leave to amend where the plaintiff "failed to allege any facts concerning the [defendant] District Court") (citations omitted).

administrative record indicates that Plaintiff was 56 years old at the time of the alleged adverse employment actions.  (Dkt. No. 1 at 29.)  The second and third elements are satisfied for the reasons discussed above in the context of Plaintiff's race discrimination claim.  However, Plaintiff has failed to allege any facts that raise an inference of age discrimination.  As such, the Court *sua sponte* dismisses the claim with leave to amend.  *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (citations omitted); *Foley v. U.S.*, No. C 06-7481 CW, 2007 WL 2429414, at *5 (N.D. Cal. Aug. 23, 2007) (citations omitted).

## C.  Disability Discrimination

Next, Plaintiff alleges that Defendant discriminated against him on the basis of his disability in violation of Title VII, the ADA, and the Rehabilitation Act.  (Dkt. No. 1 at 2-5.)  Though the Complaint does not enumerate separate claims for relief, it appears that Plaintiff brings two separate disability claims: disparate treatment and failure to accommodate.  (*Id.*)  As an initial matter, federal employees must bring disability discrimination claims exclusively through Rehabilitation Act, Section 501, 29 U.S.C. § 791, which incorporates the ADA's prohibition against such discrimination, 42 U.S.C. § 12111, and applies the ADA's legal standards.  29 U.S.C. § 791; *see Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 413-14 (9th Cir. 1985); *see also Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093 (9th Cir. 2008) (noting that Title VII does not proscribe disability discrimination); *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002) (holding that there is no significant difference in the analysis of rights and obligations under the ADA and the Rehabilitation Act); *Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938, 939 (9th Cir. 2009) (noting that when reviewing the sufficiency of disability discrimination claims under the Rehabilitation Act, courts incorporate the ADA's standards).[10]  The Court therefore dismisses Plaintiff's disability discrimination claims to the extent he brings them under Title VII and the ADA, and analyzes the claims only under the Rehabilitation Act.

1.  *Plaintiff Fails to Adequately Allege Disparate Treatment*

---

[10] In his opposition Plaintiff requests leave to amend the Complaint, but requests that the Court consider all of his disability claims under both the Rehabilitation Act and the ADA.  (Dkt. No. 22 at 8.)  Plaintiff appears to misunderstand that the Court must dismiss his ADA claims because the Rehabilitation Act is his exclusive remedy as a federal employee claiming disability discrimination.  *See Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 413-14 (9th Cir. 1985).  Although Plaintiff cannot bring an ADA claim, the Rehabilitation Act incorporates the ADA's prohibition against disability discrimination.  *See id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff's disparate treatment claim fails to state a claim.  Plaintiff alleges that Defendant "discriminated against [him] on the basis of [his] mental disability by taking disciplinary action against [him] and firing [him], [even though Defendant's m]anagement knew well before they fired [him] that [he] had a mental disability[.]"  (Dkt. No. 1 at 4.)

To state a disparate treatment claim under the Rehabilitation Act, a plaintiff must plead facts sufficient to plausibly allege that he (1) suffers from a disability, (2) is otherwise qualified for employment, and (3) suffered discrimination because of his disability.  *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (citations omitted); *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001).  Under the Rehabilitation Act, a plaintiff has a disability if he "has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment[,]" and "can benefit in terms of an employment outcome from vocational services[.]"  29 U.S.C. § 705(20).  With respect to element two, "[a]n otherwise qualified individual, within the meaning of the Rehabilitation Act, is one who can perform the essential functions of the position with or without reasonable accommodation."  29 C.F.R. § 1613.702(f).  A plaintiff can meet the third element—that he was discriminated against "by reason of" his disability—by alleging facts sufficient to plausibly establish that his disability was a "motivating factor" in an adverse employment action.  *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1021 (9th Cir. 2010) (citation omitted).

Here, Plaintiff has not sufficiently pleaded the first element.  Plaintiff has alleged enough facts for the Court to conclude that he may qualify as disabled based on his various mental health diagnoses, including obsessive-compulsive and avoidant personality disorders, Asperger's Syndrome, chronic clinical depression and anxiety, and significant interpersonal relation problems (Dkt. No. 1 at 5, 8, 11), and has even alleged that Defendant knew of at least some of these diagnoses (*see, e.g.*, *id.* at 5, 8, 11, 18), but he has failed to specify which condition was purportedly the basis of a discriminatory adverse employment action.  The Complaint thus fails to comply with pleading standards.  *See McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1278 (E.D. Cal. 2012) (finding that the complaint failed to state a claim for disability discrimination in part because the claims were "vague as to [the] alleged disability and fail[ed] to identify it precisely"); *Lacayo v. Donahoe*, No. 14-CV-04077-JSC, 2015 WL 993448, at *1 (N.D.

13

Cal. Mar. 4, 2015) (concluding claim was insufficiently pleaded where the plaintiff failed to specify which condition she purported to be the basis of any discriminatory employment action, even though she had alleged facts sufficient to conclude that she qualified as disabled based on her mental health diagnoses).

As for the second element, the Complaint does not allege that Plaintiff was an "otherwise qualified individual" able to "perform the essential functions of the position with or without reasonable accommodation." 29 C.F.R. § 1613.702(f). However, for the reasons discussed above regarding the second element of Plaintiff's race and gender discrimination claims, the Court concludes that Plaintiff has sufficiently alleged that he is otherwise qualified for employment. That said, in any amended complaint Plaintiff should include an affirmative allegation that he is otherwise qualified, including factual allegations about the essential functions of the letter carrier position and his ability to perform those functions with or without reasonable accommodation, *see* 29 C.F.R. § 1613.702(f), in order to move the allegation beyond a formulaic recitation of the element. *See Haro v. Therm-X of Cal., Inc.*, No. 15-cv-02123-JCS, 2015 WL 5121251, at *4 (N.D. Cal. Aug. 28, 2015).

Plaintiff has also plausibly alleged element three: that he was subject to adverse employment action because of his disability. Although the Complaint itself does not expressly allege disparate treatment disability discrimination, the allegations raise a plausible inference that Plaintiff's mental health disabilities were a motivating factor in his termination. Several facts stand out. First, in her August 2010 letter to HR describing Plaintiff's recent behavior, Supervisor Suarez wrote that "[t]he Doctor also states that he believes [Plaintiff]'s condition is untreatable and that his condition his [sic] permanent, and there is little likelihood that his condition will improve with treatment or time[,]" referring to the 1998 Fitness Exam report. (Dkt. No. 1 at 18.) Second, the September 2010 Fitness Exam report stated that Plaintiff was mentally fit for employment as a letter carrier but that Defendant's "workplace support and accommodation for his re-initiating and maintaining private Mental Health care [was] critical. He should be encouraged and required to get help for his clinical problems now becoming more evident in the workplace[,]" and Supervisor Suarez issued the Removal Notice less than three months later without first placing Plaintiff on a 14-day suspension. (*Id.* at 9, 11, 31.) Supervisor Suarez's

reliance on the 1998 Fitness Exam report on Plaintiff's mental health as a basis for requesting the 2010 Fitness Exam order, coupled with the fact that she issued the Removal Notice on the heels of the updated report concluding that Plaintiff was mentally fit and without following standard disciplinary procedure, permits the inference that discriminatory animus motivated Supervisor Suarez's decision. *See Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011) (noting that "an employer's deviation from established policy or practice" that disadvantages a plaintiff may show pretext for discrimination); *Mishler v. Care Ctr. Inc.*, No. CV 08-00568-MO, 2008 WL 4224832, at *2 (D. Or. Sept. 10, 2008) (concluding that the factual allegations were sufficient to infer discriminatory motive where the plaintiff alleged that the defendant perceived her as being disabled based on an incident where she was unable to care for herself and terminated her two days after that incident). Based on these allegations, the Court concludes that Plaintiff has plausibly alleged the third element.[11]

However, as discussed above, Plaintiff's Complaint still fails to comply with pleading standards because he has not clearly alleged which disabling condition was purportedly the basis of his termination. *McKenna*, 894 F. Supp. 2d at 1278. The Court therefore GRANTS Defendant's motion to dismiss the disparate treatment disability discrimination claim. In any amended complaint, Plaintiff needs to clearly identify the condition that serves as the claim's basis.

   2.   *Plaintiff Fails to Adequately Allege Failure to Accommodate*

Plaintiff also fails to sufficiently allege that Defendant discriminated against him by failing to accommodate his disability. (Dkt. No. 1 at 4-5.) To state a prima facie case for failure to accommodate, a plaintiff must allege that (1) he is disabled, (2) he is a qualified individual, and (3)

---

[11] In his opposition Plaintiff alleges that two months before his termination, he submitted an overtime request to Supervisor Suarez, who said "you're crazy." (Dkt. No. 22 at 18.) Based on the timing of the comment and Supervisor Suarez's knowledge of Plaintiff's mental disabilities (*see* Dkt. No. 1 at 4-5), this allegation further supports an inference of disparate treatment disability discrimination. *See Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005) ("Where a decisionmaker makes a discriminatory remark against a member of the plaintiff's class, a reasonable factfinder may conclude that discriminatory animus played a role in the challenged decision.") (citation omitted); *Mishler*, 2008 WL 4224832, at *2. Although the Court does not consider facts alleged for the first time in the opposition, this fact weighs in favor of granting leave to amend. *Broam*, 320 F.3d at 1026.

a reasonable accommodation is possible. *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999) (citations omitted); *Buckingham v. U.S.*, 998 F.2d 735, 739-40 (9th Cir. 1993).

First, as discussed in the disparate treatment claim context, Plaintiff has not clearly identified the disability upon which he bases his discrimination claim, which renders the claim insufficiently pleaded. *See McKenna*, 894 F. Supp. 2d at 1278. Moreover, "[t]he employer's knowledge of the . . . mental limitations resulting from the employee's disability is a prerequisite to the employer's duty to make reasonable accommodations." *Foster v. City of Oakland*, No. C-08-01944-EDL, 2008 WL 3286968, at *2 (N.D. Cal. Aug. 5, 2008) (citations omitted). Thus, in any amended complaint Plaintiff must also allege facts that plausibly establish that Defendant was aware of whatever particular disability underlies his claim. Second, also discussed above, the Court concludes that Plaintiff has sufficiently alleged that he is otherwise qualified for employment, but Plaintiff should affirmatively allege that he is qualified to perform the essential functions of the letter carrier position with or without reasonable accommodation and expressly allege facts that support such an inference. *See Haro*, 2015 WL 5121251, at *4.

As for the third element, a "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(8). The plaintiff must also allege enough facts to make a facial showing that a reasonable accommodation is possible. *See Garity v. Donahoe*, No. 2-11-cv-01805-MMD-CWH, 2013 WL 321577, at *2 (D. Nev. Jan. 25, 2013) (citing *Buckingham*, 998 F.2d at 739-40).

Here, the Complaint alleges only in a conclusory manner that Defendant failed to provide him with a reasonable accommodation despite being aware of his mental disabilities. But the documents attached to the Complaint plausibly suggest that a particular accommodation was sought and would have been possible: the 2010 Fitness Exam report recommends that Plaintiff be encouraged and required to obtain professional mental health care, and states that "USPS workplace support and accommodation for [Plaintiff's] re-initiating and maintaining private

1   Mental Health care is critical." (Dkt. No. 1 at 11.)  Whether this specific accommodation is

2   reasonable is a question of fact.  *See Ludovico v. Kaiser Permanente*, 57 F. Supp. 3d 1176, 1201

3   (N.D. Cal. 2014) (collecting cases).  As such, the Court concludes that Plaintiff has alleged facts

4   sufficient to plausibly allege element three, and does not consider whether the alleged

5   accommodation is reasonable at this stage of the litigation.

6           Defendant contends that Plaintiff's claim fails in part because the Complaint does not

7   allege that Plaintiff actually requested an accommodation.  (Dkt. No. 15 at 8.)  And indeed, there

8   is authority holding that to state a failure to accommodate claim, a plaintiff must allege facts

9   showing that he *sought* a reasonable accommodation from the employer and it was denied.  *See*

10   *Davis v. Safeway, Inc.*, No. C–95–2759–VRW, 1996 WL 266128, at *6 (N.D. Cal. May 14, 1996)

11   ("An employer's obligation to accommodate an employee's disability is [ ] not triggered until a

12   request for accommodation is made") (citation omitted); *Nort v. Brown*, No. 14cv1663-LAB

13   (KSC), 2015 WL 5155195, at *10 (S.D. Cal. Sept. 1, 2015) (dismissing the plaintiff's claim where

14   it could not "be said based on the facts alleged that plaintiff made defendants aware of a 'specific

15   reasonable' and 'necessary' accommodation that they failed to provide").  But employees are not

16   required to request an accommodation in every situation; awareness of the need for an

17   accommodation may be enough.  *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir.

18   2000), *overruled on other grounds & vacated sub nom. U.S. Airways, Inc. v. Barnett*, 535 U.S.

19   391 (2002.  Indeed, "[a]n employer should initiate the reasonable accommodation interactive

20   process without being asked if the employer: (1) knows that the employee has a disability, (2)

21   knows, or has reason to know, that the employee is experiencing workplace problems because of

22   the disability, and (3) knows, or has reason to know, that the disability prevents the employee from

23   requesting a reasonable accommodation." *Id.* (internal quotation marks and citation omitted).

24   Here, the Complaint adequately alleges that Defendant knew Plaintiff suffered from disabilities

25   and had reason to know those disabilities were causing problems at work.  (*See, e.g.*, Dkt. No. 1 at

26   11, 16-18.)  Whether Defendant had reason to know that Plaintiff's disabilities prevented him

27   from requesting an accommodation is unclear; but drawing all inferences in Plaintiff's favor, the

28   allegations regarding his diagnoses of avoidant personality disorder and significant interpersonal

    relation problems suggest that Defendant may have had reason to know that Plaintiff would have

United States District Court
Northern District of California

17

difficulty communicating his need for an accommodation.  The allegations are therefore sufficient to reasonably infer that Defendant was aware of the need for an accommodation, although it may turn out not to be the case at a later stage of litigation.

In short, the Complaint does not clearly identify the disability upon which Plaintiff bases the failure to accommodate claim, and thus the Court GRANTS the motion to dismiss this claim as insufficiently pleaded, with leave to amend.  *See Lopez*, 203 F.3d at 1127.

### D.  Plaintiff Fails to Adequately Allege Retaliation

Plaintiff's final claim alleges that Defendant retaliated against him for engaging in protected activity.  (Dkt. No. 1 at 2, 4.)  The claim is insufficiently pleaded.  To state a claim for retaliation, a plaintiff must allege that (1) he engaged in a protected activity, (2) his employer subjected him to a materially adverse employment action, and (3) a causal link exists between the protected activity and the adverse action.  *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013) (citations omitted).

As to the first element, Plaintiff alleges that he engaged in protected activity prior to his termination.  "There is no doubt that filing grievances and pursuing constitutional and statutory remedies are protected activities."  *McFadden*, 2014 WL 1365661, at *2; *see also Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006) (noting that an employee engages in protected activity when he opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that statute) (citations omitted).  While Plaintiff's allegation that he engaged in protected EEO activity (Dkt. No. 1 at 4) is conclusory on its own, Supervisor Suarez's statement in her letter to HR regarding Plaintiff's prior EEO complaints supports it.  (*Id.* at 17.)  What is more, the pleadings show that Plaintiff filed at least one union grievance during July or August 2010 (*see* Dkt. No. 1. at 17).[12]  But although Plaintiff has alleged that he engaged in prior

---

[12] Plaintiff alleges for the first time in his opposition that he also filed complaints with the EEOC in May, July, and September 2010.  (Dkt. No. 22 at 17.)  Plaintiff should include these allegations in any amended complaint to clarify his retaliation claim.  Plaintiff also newly alleges in his opposition that he believes Supervisor Suarez retaliated against him for reporting her to the Office of the Inspector General in 2007 for unethical conduct.  (Dkt. No. 22 at 18.)  Even if this report qualified as protected activity, it occurred more than two years prior to the alleged adverse employment actions and therefore this fails to allege sufficient proximity to plausibly allege a causal link.  *See Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 802 (9th Cir. 2003) (nine months is too long to give rise to plausible inference of causation) (citation omitted); *Heyer v. Governing Bd. of Mt. Diablo Unified Sch. Dist.*, 521 F. App'x 599, 601 (9th Cir. 2013).  The same is true of the

protected activity in the form of EEO claims and union grievances, he fails to identify the statute(s) under which he brought those claims or the nature of those claims.  This is problematic because a plaintiff may bring a retaliation claim only under the statute under which he alleged the protected activity—that is, a Title VII retaliation claim can only allege reprisal for engaging in prior protected activity reporting race, religion, gender, and national origin discrimination; an ADEA retaliation claim can only allege reprisal for engaging in prior protected activity reporting age discrimination; and so on.[13]  *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (noting that a plaintiff may establish the first element of a prima facie retaliation claim under Title VII by showing that she engaged in activity protected under Title VII).  The Complaint identifies Title VII as the statutory basis for the claim, but it is a form complaint.  (*See* Dkt. No. 1 at 2.)  Thus, the Court advised Plaintiff at oral argument that in any amended complaint he should identify which statute(s) he brings his claim under and the nature of the underlying protected activity, that is, what type of discrimination he reported to the EEO and his union.  Because the Complaint fails to do so as written, and instead refers only generally to prior EEO activity, it does not comply with Rule 8(a)'s requirements that a complaint include a short and plain statement of the claim, and instead it leaves Defendant and the Court guessing as to the true basis of the claim.

As to the second element, "[a]n adverse employment action is any action reasonably likely to deter employees from engaging in protected activity."  *Pardi*, 389 F.3d at 850 (citation omitted).  The "definition includes actions materially affecting compensation, terms, conditions, or privileges of employment[,]"  *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir.

---

alleged EEOC mediation in 2005.  (Dkt. No. 1 at 27.)

[13] Although courts consider retaliation claims under each particular statute they are brought under, the standard is the same for retaliation claims under Title VII, the ADEA, and the Rehabilitation Act.  *See Hashimoto v. Dalton*, 118 F.3d 671, 675 (9th Cir. 1997) ("The ADEA anti-retaliation provision is parallel to the anti-retaliation provision contained in Title VII, and [ ] cases interpreting the latter provision are frequently relied upon in interpreting the former") (internal quotation marks and citation omitted); *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 n.5 (9th Cir. 2004) (courts analyze Title VII retaliation claims under same framework as ADA retaliation claims) (citation omitted) and *Coons v. Sec'y of the U.S. Dept. of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act") (citations omitted).

2002) (citations, quotation marks, and internal alterations omitted), and "of course, termination of employment is an adverse employment action[.]" *Id.*; *Adetuyi v. City & Cnty. of S.F.*, 63 F. Supp. 3d 1073, 1085 (N.D. Cal. 2014). Thus, Plaintiff adequately alleges that Defendant subjected him to an adverse employment action: when it issued the Removal Notice that ended his employment.

As to element three, Plaintiff has alleged facts that give rise to a plausible inference that Defendant terminated him *because of* his prior protected activity—*i.e.*, causation. Causation may be established by direct evidence or "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987) (citation omitted); *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 802 (9th Cir. 2003) (citation omitted). Causation will be inferred from timing alone only if the proximity is "very close[,]" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam), such that the "adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002) (citations omitted). Courts have held that a three-month gap is short enough to give rise to a plausible inference of causation at the pleading stage, *see, e.g.*, *Gordon v. Hughes*, No. 2:13-cv-01072-JAD-GWF, 2015 WL 1549141, at *2 (D. Nev. Apr. 8, 2015), but a nine-month gap is too long. *See, e.g.*, *Manatt*, 339 F.3d at 802; *Heyer v. Governing Bd. of Mt. Diablo Unified Sch. Dist.*, 521 F. App'x 599, 601 (9th Cir. 2013).

Here, the Complaint alleges that Defendant issued the Removal Notice just five months after Plaintiff filed a union grievance and less than four months after Supervisor Suarez expressed concern to HR about Plaintiff's union grievances, EEO activity, and letters to management. (Dkt. No. 1 at ¶¶ 2, 17.) This proximity gives rise to a plausible inference of causation. *See Manatt*, 339 F.3d at 802; *Heyer*, 521 F. App'x at 601.

In short, because Plaintiff has not identified the statute under which he brings the retaliation claim or the tenor of the alleged prior protected activity, the Court dismisses the retaliation claim with leave to amend. If Plaintiff clarifies these things, he likely will be able to state a claim for retaliation. At a minimum, Plaintiff should incorporate the factual allegations from his opposition regarding the EEO complaints he filed in 2010, including the timing and the

20

type of discrimination alleged, in any amended complaint.

<b>CONCLUSION</b>

To summarize, the Court GRANTS Defendant's motion to dismiss Plaintiff's race and gender discrimination, disparate treatment disability discrimination, failure to accommodate, and retaliation claims with leave to amend. The Court also dismisses Plaintiff's age discrimination claim with leave to amend. The Court has concerns as to whether Plaintiff will be able to state a claim for race, age, and gender discrimination, but believes he will be able to state a claim for disability discrimination provided he is able to specify the disability or perceived disability upon which his claims are based.

Plaintiff shall file his amended complaint within 30 days.

The Court encourages Plaintiff to seek free assistance from the Northern District's Pro Se Help Desk, United States Courthouse, San Francisco, 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, CA 94102 or the Help Desk at the Oakland Federal Courthouse, 1301 Clay Street, 4th Floor, Room 470S, Oakland, CA 94612. Plaintiff can make an appointment in person or by calling 415-782-8982.

**IT IS SO ORDERED.**

Dated: March 14, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIAN R. MCCARTHY, | Case No.  15-cv-03308-JSC |
| Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| MEGAN J. BRENNAN, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 14, 2016, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Kian R. McCarthy
279 Yerba Buena Avenue
San Francisco, CA 94127

Dated: March 14, 2016

Susan Y. Soong
Clerk, United States District Court

By:_____
Ada Means, Deputy Clerk to the
Honorable JACQUELINE SCOTT CORLEY

22